ORIGINAL

# In the United States Court of Federal Claims

No. 18-162C

Filed: July 30, 2018

**FILED**

'JUL 30 2018

U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * * * *    *
                                       *
DARLENE BENNETT,                       *
                                       *
          Plaintiff,                   *
                                       *   Pro Se Plaintiff; Motion to Dismiss;
     v.                                *   Subject Matter Jurisdiction; In Forma
                                       *   Pauperis; Tort; Equitable Relief.
UNITED STATES,                         *
                                       *
          Defendant.                   *
                                       *
* * * * * * * * * * * * * * * * * *    *
```

Darlene Bennett, pro se, Suitland, Maryland.

Steven C. Hough, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him were Tara K. Hogan, Assistant Director, Robert E. Kirshman, Jr., Director, and Chad A. Readler, Acting Assistant Attorney General. Of counsel was and Sandra Soderstrom, Attorney, Office of the General Counsel, United States Department of Commerce, Washington, D.C.

## OPINION

**HORN. J**

### FINDINGS OF FACTS

On January 31, 2018, plaintiff filed a complaint against the "United States, Dept. of Commerce," "on the grounds of Discrimination, Age, Retaliation, Harassment, Decretion/Acretion [sic] of duties, Hostile work environment, adverse action, and disparate treatment." Also on January 31, 2018, plaintiff filed an Application to Proceed In Forma Pauperis. Plaintiff states that she is "filing this complaint with the U.S. Court of Federal Claims for a judge to review and provide a ruling based on the accepted allegations, facts and evidence presented." According to plaintiff's January 31, 2018 complaint, plaintiff seeks "compensatory damages for emotional distress, harassment, embarrassment, and continued reprisal in the sum of $800,000." Additionally, plaintiff seeks a "[r]ewrite of performance reviews for FY15, FY16, & FY17 to remove negative comments that do not reflect the employee. Promotion to next grade level of pay band 3. For the Retaliation to stop and to work under new management. Remove current management."

7017 1450 0000 1346 4568

On March 5, 2018, the court received a letter from plaintiff, which did not comply with the court's filing procedure, and which appeared perhaps to be an attempt to amend her complaint. On March 12, 2018, the court issued an Order that referred plaintiff to the Rules of the United States Court of Federal Claims (RCFC) and instructed plaintiff to refer to RCFC 10 (2018), titled "Form of Pleadings," and to respond to the court's Order on or before April 16, 2018. On March 27, 2018, the court received a filing from plaintiff, which did not include a certificate of service, and on March 28, 2018, the court issued an Order instructing plaintiff to refile her March 27, 2018 filing in accordance with RCFC 5.3 (2018).

On April 6, 2018, before the defendant filed a response to plaintiff's original complaint, plaintiff filed an amendment to her complaint titled "FIRST AMENDED COMPLAINT," in which plaintiff alleges additional claims and requests further relief.[1] (capitalization in original). In plaintiff's amendment to her complaint, plaintiff asserts "new accepted allegations by the Commerce Dept. for investigation," and indicates that since filing her complaint "she continues to experience retaliation/reprisal as a result of the filed complaint(s)." Plaintiff's amendment to her complaint also requests an increase in monetary relief, from $800,000.00 to $2,500,000.00, "because of the enlargement of the case with adding in the two previous cases as well as the continued distress due to the continued retaliation the Plaintiff endures daily." Plaintiff requests that "all legal fees be paid by the agency in the event an attorney is hired," as well as "all court fees" and "[a]ll fees for production of documents, photocopying and all certified mail." Finally, plaintiff asks for "all leave in which Plaintiff has used for stress days, case related Dr. Appts and leave used for complaint prep be reimbursed."

Plaintiff is currently employed as a "Program Support Specialist . . . with the Office of Sustainable Fisheries, National Marine Fisheries Service, National Oceanic and Atmospheric Administration [NOAA]." According to plaintiff's complaint, "due to her race (African American), color (African American), age (DOB: February 14, 1970), and in retaliation for her prior EEO[2] [Equal Employment Opportunity] activity, she has been subjected to acts of discrimination and harassment constituting a hostile work environment." Plaintiff asserts:

---

[1] Defendant acknowledges, "Ms. Bennett appears to have intended to supplement her complaint pursuant to RCFC 15(d) rather than to amend her complaint," and that, "in light of Ms. Bennett's pro se status, we have construed her amended complaint as a supplemental complaint and will address the allegations contained in both pleadings." Plaintiff states that "[a]ll of the information that was included in the original case before the case was amended should remain and move forward with the new information in the amendment."

[2] Throughout her complaint, plaintiff alternates between referring to her cases as either at the "EEO" or "EEOC [Equal Employment Opportunity Commission]." It is unclear, however, whether plaintiff took any of her cases to the EEOC, or if all four of her cases remained EEO cases at the Office of Civil Rights at the United States Department of Commerce.

1. Jenni Wallace, her supervisor, questions her ability to do her work assignments and has accused her of not meeting deadlines and not completing her assignments with all of the information that is needed;

2. Wallace has harassed her about making errors on her assignments which are not her fault.

3. Wallace commented to her that "it is not [Complainant's] responsibility to judge [Complainant's] colleagues" and to just do what Wallace instructs her to do and to stop questioning everything.

4. Wallace has other staff members watch her and scrutinize everything she does.

5. When Wallace has questions about Complainant's work, Wallace involves a co-worker, Maria Utterhove [sic], to review it.

6. On October 26, 2016, Wallace denied her request to telework additional days.

7. On November 7, 2016, she received an unfavorable performance rating, with a score of 59, which was not an accurate reflection of her actual performance.

8. With respect to her work assignments and assigned duties:

   a. She is being forced to take on new projects and she has been informed that she be mandated to take on new tasks regardless of whether she knows the tasks or not. Further, Wallace told her that she has one (1) to two (2) weeks to find new work or she will assign the new tasks.

   b. When she sought out work from a co-worker that she was interested in, it was blocked.

   c. Wallace performs all work related to Human Resources uploading of documents and attends Human Resources meetings.

   d. Wallace attends all meetings but she is forced to self-teach herself the necessary skillsets for processing forms that she knows nothing about and also self-teach herself the Hiring freeze process.

   e. Wallace communicates with the Acquisition Office on her contract duties then she is notified, instead of being contacted first.

> f.  Her performance plan has been changed to add in new projects/tasks.

9.  The comments made at her face-to-face midyear meeting differ from the comments placed in Sharepoint.

(alterations in original).

Plaintiff's complaint alleges that "[t]he Agency has fostered a culture of bigotry and there is no accountability." Plaintiff alleges that her current supervisor, Jenni Wallace, is retaliating against her "through performance reviews, mcromanaged [sic] tasks, increased surveillance. etc." Plaintiff's complaint also asserts that "[t]his case also involves many members of the General Counsel and others within the Dept. of interfering with the process of the investigation," but plaintiff does not indicate the names of the additional individuals or how the individuals have interfered with "the process of the investigation."

Plaintiff's complaint and subsequent amendment to the complaint indicate that she has filed at least four claims with the EEO claims.[3] In her complaint, plaintiff states "[t]he case I bring before you is case number 54-2016-00327. This case was pulled from the EEOC because the agency had not assigned a judge to the case." Plaintiff alleges "case number 54-2016-00327 was not handled right from the beginning." According to plaintiff, "[t]he Agency failed to hire an investigator to investigate the case and when asked about why it took so long for an investigator to be assigned, the Agency responded that for reasons they did not feel they needed to discuss with me." Attached to plaintiff's original complaint are emails, however, which indicate that Mr. George White was assigned as an investigator to "case number 54-2016-00327" on Friday, February 24, 2017. Plaintiff also claims that, "[o]nce the investigator was hired, we were suppose [sic] to meet but that never happened," and that plaintiff "requested several times to be granted a new investigator but the Agency denied the request. It was as if their [sic] was a personal incentive or gain for having that investigator."[4] Plaintiff's complaint further alleges that

---

[3] Plaintiff has a long litigation history in both federal and state court. Regarding federal court litigation, as of July 2018, plaintiff has been party to at least three additional lawsuits in federal courts. On March 27, 2018, plaintiff filed <u>Bennett v. United States</u>, No. 18-454C (Fed. Cl. Mar. 27, 2018), in the United States Court of Federal Claims, which is ongoing. On May 22, 2018, plaintiff filed <u>Bennett et al v. Hyundai Motor Co., et al.</u>, No. 8:18-CV-01468 (D. Md. May 22, 2018), in the United States District Court for the District of Maryland, which is also ongoing. On March 3, 2009, the United States District Court for the District of Maryland, granted plaintiff's motion for remand to the Circuit Court for Montgomery County in <u>Bennett v. Applied Training Resource, Inc.</u>, No. 2009-0499, 2009 WL 10687350 (D. Md. Apr. 17, 2009).

[4] Plaintiff's complaint also includes a series of emails exchanged between herself and Ms. Sandra Zanelotti, Chief Investigator of the Office of Civil Rights at the Department of Commerce, dated Thursday, March 30, 2017 through Friday, March 31, 2017, in which plaintiff requests a new investigator.

"[t]he investigator then put together a Report of Investigation without any input from me the Complainant. The Report of Investigation was not mailed to me and when I asked about it I was told that it was sent back to them." Moreover, plaintiff indicates that she "then had to request for the Report of Investigation to be sent to me via email."

Additionally, plaintiff states, "I also have a 2 consolidated cases that is [sic] in the appeal process that is not apart [sic] of this case but should the decision not go in my favor, I would want to consolidate that case with this complaint for a judge to rule and provide a ruling." In plaintiff's amendment to her complaint, plaintiff indicates that even though case numbers "54-2015-00095 & 54-2016-00258" are still "in the appeal stage," she requests to add them to her current complaint before this court, stating, "[t]he 180 days is the stated timeframe for when a lawsuit can be filed and the complaints can be withdrawn if no decision has been granted." Finally, plaintiff's amendment to her complaint requests that the court "pls. allow all dismissed allegations to [sic] added into case." Plaintiff attached to her amendment to her complaint a dismissal document dated March 26, 2018, from the Office of Civil Rights at the United States Department of Commerce, which dismisses plaintiff's claims "in reference to Complaint Number 54-2018-00028."

Plaintiff's amendment to her complaint also includes an email dated April 4, 2018, between plaintiff and her supervisor, Jenni Wallace, in which Ms. Wallace explains, "[i]t has come to my attention that I am actually not able to give official time for time spent preparing EEO claims that are in federal court. If you have any questions about the regulations, please contact Sandra Soderstrom in the Office of the General Counsel. . . ." According to the Office of Civil Rights' March 27, 2018 dismissal, plaintiff alleged that Ms. Soderstrom, of the Office of General Counsel, was "advising when Complainant can and cannot work on EEO matters, and advising her supervisor to threaten her with disciplinary action if her supervisor is not provided certain information concerning her requests for time to work on EEO matters." The dismissal also indicates that "[i]n a February 27, 2018 amendment request," plaintiff alleged that "the Office of General Counsel has been advising her immediate supervisor in her current EEO complaint that Complainant must submit requests for official time for her EEO complaint through the supervisor for approval or denial, even though the complaint is against this supervisor." Plaintiff's claims alleging interference by Ms. Soderstrom were dismissed by the Office of Civil Rights at the United States Department of Commerce because:

> We find that Complainant has failed to show how the Agency attorney's advice, in her representational role, is an agency action affecting a term, condition, or privilege of her employment. Accordingly, these claims are dismissed for failure to state a claim, pursuant to Title 29, Code of Federal Regulations (C.F.R.) section (§) 1614.107(a)(1).

In addition to plaintiff's request to add case numbers 54-2018-00028, 54-2015-00095, and 54-2016-00258 to her complaint in this court, plaintiff's amendment to her complaint introduces a series of new allegations that plaintiff asserts demonstrate her claims of continued retaliation. First, plaintiff's amendment to her complaint states "[a]ll of

the Plaintiff [sic] work documents were removed from her computer then replaced a week or so later." According to plaintiff, she reported "the incident" to "the Agency CIO's dept, Inspector General and Helpdesk security." Plaintiff claims that the "helpdesk was not able to define what happened to Plaintiff's files or trace any kind of tampering with files." Although plaintiff claims "[t]he Helpdesk stated that it was malware," plaintiff attaches an email to her amendment, dated March 7, 2018, in which Thomas Bolton, a contractor with the "NMFS OCIO Help Desk" told plaintiff, "[t]here is no evidence of malware or malicious tampering on your machine; however there is evidence of software/hardware corruption, and their recommended next action is to get your hard drive replaced." Plaintiff responded to Mr. Bolton, stating:

> The conclusion makes no sense. My computer is working fine. It'A [sic] not moving slow, etc as well, my files were removed and then put back in the correct place. That is not malware. I spoke with computer security about this matter. This situation is very unusual and strange. I do believe that the helpdesk is aware of what happened behind the scenes. This is something that took place behind the scenes.

In plaintiff's response to Mr. Bolton, plaintiff also states "I beleve [sic] security should invest in figuring out exactly what happened and holding that entity accountable and ensure that it does not happen again." Plaintiff claims that "[t]he Inspector General's office opened up an investigation and assigned the investigation back to NOAA." According to plaintiff, when she learned that the NOAA Audits office would be conducting the investigation, plaintiff reached out to Mack Cato, Director of the NOAA Audits office to determine who the investigator would be, but plaintiff indicates that she did not receive a response from Mr. Cato. Plaintiff's amendment to her complaint asserts that "[t]he Dept. basically allowed the organization to investigate itself and to request the line office to report its own wrongdoing. In doing so, this keeps the Inspector General from having to report the findings to Congress."

Plaintiff's amendment to her complaint also alleges that she was tasked with purchasing supplies on a government card and shipping them to a contract employee's house. According to plaintiff, she was "mandated to take on this new task because all of her contract duties were removed from Plaintiff as a way of punishment." Plaintiff claims that because she was assigned a new task, she had to undergo training, and during training it was "noted that supplies cannot be ordered for contract employees." Plaintiff claims that she contacted the head office of the acquisition and received confirmation that purchasing and shipping supplies to the homes of contract employees is not allowed. According to plaintiff's amendment to her complaint:

> The Plaintiff informed Immediate supervisor (Jenni Wallace) of this information and said to the supervisor that she wanted to make sure that she did not do anything to violate policy and get in trouble.  Supervisor instructed Plaintiff to move forward in placing the order knowing that the process was not legitimate. Also, pls [sic] note that supervisor is an Approving official for all purchase card orders. The Plaintiff asked the Head

of the AGO purchase card further about the process. The Plaintiff was told that I could also obtain a copy of the contract to see if there is any language that would state what the government buys vs. the contract company. When the Plaintiff requested a copy of the contract, she was denied a copy of the contract.

Plaintiff's amendment includes emails between plaintiff and Ms. Maria Uitterhoeve, the Contracting Officer's Representative (COR), that indicate plaintiff requested a copy of the above-mentioned contract from Ms. Uitterhoeve, and that Ms. Uitterhoeve responded by asking why the copy was needed. In a subsequent email, Ms. Uitterhoeve told plaintiff, "[a]ll of the files are accessible to you on the S drive. However I am the COR on that contract, so I would like to know what's up." Plaintiff responded:

> Thanks Maria. Your action [sic] are surprising and alarming. We have never had this issue before and being a COR on a contract has never stopped you or Jenni from doing things to one of my contracts in which I was the COR. Any other time there has never been an issue with providing to me a copy of any contract not sure there is an issue now.

According to plaintiff's amendment to her complaint, on April 3, 2018, "the Plaintiff was again requested to order supplies once again by acting supervisor at the advisement of immediate supervisor (Jenni Wallace)." In emails attached to plaintiff's amendment to her complaint, plaintiff explained to "Acting supervisor, Katy Barrett," that she did not want to go against policy and requested that she be excused from the task should the orders need to go to contractors. Plaintiff's amendment to her complaint alleges that Ms. Barrett subsequently confirmed that "some of the supplies were for a contract individual" and suggested, "[s]ince Maria is COR on MOBIS, it seems like a good idea to bring her in." Plaintiff responded stating:

> With all do [sic] respect, with my downhill relationship that I have with our current management and being instructed to move forward with an order even though I should not have was enough for me to see that my management and supervisor does [sic] not support me. My supervisor advised me to process that order. I do not have any trust for my current management. I was advised to obtain a copy of the contract and I was denied receiving that copy of the contract to see what we are allowed and not allowed to do. I do not want to be involved in anything that is illegal or against govt policy or regulation. I carry a level of integrity that requires me to always walk and perform right. I do not mind placing the order but I cannot do so if I am going against govt. policy. It would be good for Maria to order those supplies for any contractor within this office since she is the COR and knows what the contract states. I ask that you not look at this as my going against you but that you look at it as having a level of respect, integrity and being a good employee for wanting to do the right thing which is missing in today's society.

Plaintiff's amendment to her complaint also asserts that because her supervisors would not grant her official time off to work on her EEO complaints, plaintiff was setup for failure. According to plaintiff, her "[i]mmediate supervisor (Jenni Wallace) responded to all emails but would not respond to the email from Plaintiff requesting official time." Plaintiff claims she was told that such leave could be requested just like "sick leave, annual leave etc.," and alleges that even though Ms. Wallace approved another one of plaintiff's requests for leave that same day, she "ignored" plaintiff's request for time to work on plaintiff's complaints. According to plaintiff's amendment to her complaint, "Acting Supervisor (Tracey Thompson)," who served as plaintiff's supervisor while Ms. Wallace was on leave, "stated that she would leave the official time request for my immediate supervisor (Jenni Wallace) to review and approve but approve the other leave request that Plaintiff had pending." Plaintiff asserts that her "supervisor" never responded to plaintiff's leave request and that plaintiff was "denied official time to work on complaints." According to plaintiff's amendment to her complaint, plaintiff's "[i]mmediate supervisor stated that she was informed by the Office of Civil Rights that the Plaintiff must request official time from immediate supervisor and then the immediate supervisor would work with the office of Civil Rights in [sic] how much time should be granted." Plaintiff claims that she subsequently reached out to the Office of Civil Rights Director, Kenneth Bailey, who told plaintiff that she should submit all requests to her "supervisor." Plaintiff's amendment to her complaint attaches an email exchange between Mr. Bailey and plaintiff, dated March 22, 2018, in which plaintiff stated "I don't understand why I am being required to obtain permission from the supervisor that I have the complaints against for permission to work on a case against her. Pls. reply." Mr. Bailey responded to plaintiff stating:

> If you are working on your EEO case you should request the time you need (specific hours) to spend on the case to your supervisor. She should inform you of how many of those hours she is approving you to work on your complaint. It could be all that you request or less. She can make a better determination of how much time to approve if you share what you're doing i.e. meeting with your attorney, being interviewed by the investigator, and or reviewing your Report of Investigation.

As indicated in the amendment to plaintiff's complaint, plaintiff continued to question the procedure, and asked Mr. Bailey, via email dated March 22, 2018, "[i]s it fair to say that there is something greatly wrong with the fact that the person who I have the complaint against is the one who reviews and approve [sic] the time?" According to plaintiff, "Mr. Bailey did not reply."

Also according to the amendment to plaintiff's complaint, "Plaintiff is told that she cannot have official time because the cases are with Federal Court." Plaintiff further claims "Plaintiff was informed by immediate supervisor that she must report to work on days that was originally approved or use annual leave." Additionally, plaintiff indicates that "[i]mmediate supervisor informed Plaintiff that she must change her previously certified timesheet to reflect that official time was now not granted." Plaintiff claims that because she was not granted approval to take official time off, plaintiff must now "try to

prepare case information while at the same time continue with the normal daily duties during work hours." Plaintiff asserts "[t]his is egregious, retaliatory and a setup for Plaintiff to fail with regards to ensuring that Plaintiff meet requirements of the court as well as the demands of her duties on the job."

On June 19, 2018, defendant, the United States, filed a "MOTION TO DISMISS PLAINTIFF'S COMPLAINTS," for lack of subject matter jurisdiction under RCFC 12(b)(1) (2018) (capitalization in original). The government argues that this court does not have jurisdiction over plaintiff's claims because the District Courts have exclusive jurisdiction over claims of discrimination and retaliation "under Title VII of the Civil Rights Act of 1964 (Title VII) and the Age Discrimination in Employment Act (ADEA)."

Defendant asserts that plaintiff is seeking equitable and injunctive relief, as well as tort damages, and that such relief is not available in the United States Court of Federal Claims. Additionally, defendant argues:

> Federal employees must exhaust their administrative remedies before filing a discrimination complaint in district court. See 42 U.S.C. § 2000e-5(f); 29 C.F.R. § 1614.407. To assist the Court in determining whether transfer of this action to a United States district court would be "in the interest of justice," 28 U.S.C. § 1631, we note that while Ms. Bennet may have exhausted her administrative remedies with regard to case number 54-2016-00327, it appears that she may not have done so with respect to her other EEOC cases. Specifically, Ms. Bennet appears not to have waited 180 days after filing her complaint to sue on case numbers 54-2015-00028, see 29 C.F.R. § 1614.07(b), and appears not to have waited 180 days after filing her appeals to sue on case numbers 54-2015-00095 and 54-2015-00258, see C.F.R. § 1614.07(d).

On June 26, 2018, plaintiff filed a motion titled "PLAINTIFF MOTION OPPOSING DEFENDANTS [sic] MOTION TO DISMISS." (capitalization in original). In her June 26, 2018 filing, plaintiff states that "for record that this case is against the United States" and also argues:

> [B]oth the U.S. District courts as well as the U.S. Court of Federal Claims both in concurrence have jurisdiction over this case because the case that is set forth is against the United States and therefore the Plaintiff is requesting that this case be allowed to move forward in this court.

Plaintiff further indicates, "that she is seeking the review of . . . all four cases along with the new filed case if the complaint is still awaiting a ruling."[5] In response to the government's jurisdictional arguments, plaintiff contends that "[t]his Court is authorized to

---

[5] Plaintiff appears to reference a fifth case, but plaintiff does not provide a case number or any additional information.

handle all money claims. Under the Tucker Act and statute under statute [sic] 42 U.S.C. § 1983, the jurisdiction over claims Plaintiff specified." Furthermore, plaintiff alleges:

> Under concurrent jurisdiction, both state and federal courts may exercise jurisdiction over section 1983 claims. Within section 1983, Damages – A plaintiff successfully pressing a section 1983 claim may recover a broad range of both compensatory and punitive damages. Compensatory damages may include costs of medical care and supplies, lost wages (i.e., back pay and lost future earnings), physical pain and suffering, emotional pain and suffering.

Plaintiff also addresses the government's exhaustion argument asserting, "there are 2 exceptions with the EEOC for which you may skip the process and file your case with federal court." Additionally, plaintiff claims "[t]he EEOC was notified in proper time and the case was withdrawn. The Plaintiff continues to check in with the Office of Federal Operations for a decision regarding the appeal." Plaintiff indicates that "[t]here has not been a decision made on the appeal since last checked of 6/25/2018. The 180 day clock expires July 12, 2018." Finally, in a section of plaintiff's June 26, 2018 filing titled "**NOTE**," plaintiff indicates that she "has filed another complaint against the Agency for continued retaliation," and that she "will be requesting to amend the case for a second time to add in those new accepted allegations making the case larger." (capitalization and emphasis in original).

On July 10, 2018, the government filed a motion titled "REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS," in which defendant again asserted that this court lacks jurisdiction to hear plaintiff's claims and to grant plaintiff's requested relief. (capitalization in original). On July 17, 2018, plaintiff filed a motion titled "REPLY BRIEF IN SUPPORT OF DISMISSING THE DEFENDANT'S MOTION TO DISMISS." (capitalization in original). Plaintiff's July 17, 2018 filing repeated many of the arguments alleged in plaintiff's June 26, 2018 filing and added, "[t]he Defendant states that the District Court has exclusive rights over the accepted allegations of race, age discrimination, and retaliatory claims. Just this statement alone states that the Court of Federal Claims have [sic] jurisdiction to hear and rule on this case." Additionally, plaintiff's July 17, 2018 filing alleges that "[d]efendants are simply trying to prolong or drag the case out with statements that simply hold no substance."

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se. When determining whether a complaint filed by pro se plaintiffs is sufficient to invoke review by a court, pro se plaintiffs are entitled to a more liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322

(Fed. Cir. 2014); <u>Diamond v. United States</u>, 115 Fed. Cl. 516, 524 (2014), <u>aff'd</u>, 603 F. App'x 947 (Fed. Cir.), <u>cert. denied</u>, 135 S. Ct. 1909 (2015). However, "there is no 'duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his [or her] pleading   . . . .'" <u>Lengen v. United States</u>, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting <u>Scogin v. United States</u>, 33 Fed. Cl. 285, 293 (1995) (quoting <u>Clark v. Nat'l Travelers Life Ins. Co.</u>, 518 F.2d 1167, 1169 (6th Cir. 1975))); <u>see also Bussie v. United States</u>, 96 Fed. Cl. 89, 94, <u>aff'd</u>, 443 F. App'x 542 (Fed. Cir. 2011); <u>Minehan v. United States</u>, 75 Fed. Cl. 249, 253 (2007). "While a <u>pro se</u> plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the <u>pro se</u> plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." <u>Riles v. United States</u>, 93 Fed. Cl. 163, 165 (2010) (citing <u>Hughes v. Rowe</u>, 449 U.S. at 9; and <u>Taylor v. United States</u>, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2002)); <u>see also Shelkofsky v. United States</u>, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a <u>pro se</u> plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting <u>Henke v. United States</u>, 60 F.3d 795, 799 (Fed. Cir. 1995)); <u>Harris v. United States</u>, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting <u>Minehan v. United States</u>, 75 Fed. Cl. at 253)).

In the above-captioned case, plaintiff, Ms. Bennett, filed an Application to Proceed <u>In Forma Pauperis</u>. In order to provide access to this court for those who cannot pay the filing fees mandated by Rule 77.1(c) (2018) of the Rules of the United States Court of Federal Claims, 28 U.S.C. § 1915 (2012) permits a court to allow a plaintiff to file a complaint without payment of fees or security, under specific circumstances. Section 1915(a)(1) states that:

> Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner[6] possesses [and] that the person is unable to pay

---

[6]A number of courts have reviewed the words of 28 U.S.C. § 1915(a)(1), regarding <u>in forma pauperis</u> applications by non-prisoner litigants in federal courts, and have concluded that Congress did not intend for non-prisoners to be barred from being able to proceed <u>in forma pauperis</u> in federal court. <u>See, e.g.</u>, <u>Manning v. United States</u>, 123 Fed. Cl. 679, 682-83 (2015) ("The Federal Circuit has in effect endorsed this construction of Section 1915 in a non-precedential decision." (citing <u>Jackson v. United States</u>, 612 F. App'x 997, 999 (Fed. Cir. 2015) ("affirming a Court of Federal Claims dismissal of a non-prisoner's complaint for frivolousness under Subparagraph 1915(e)(2)(B)")).; <u>Lister v. Dep't of Treasury</u>, 408 F.3d 1309, 1312 (10th Cir. 2005) ("Section 1915(a) applies to all persons applying for [in forma pauperis] status, and not just to prisoners."); <u>Haynes v. Scott</u>, 116 F.3d 137, 139 (5th Cir. 1997) (noting that "[t]here is no indication in the statute or the legislative history of [§ 1915] that Congress meant to curb [in forma pauperis] suits

such fees or give security therefor.  Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1). Therefore, the statute at 28 U.S.C. § 1915(a)(1) requires a person to submit an affidavit with a statement of all the applicant's assets, and that the affidavit state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress. See id.

When enacting the in forma pauperis statute, 28 U.S.C. § 1915, Congress recognized that "'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 324 (1989)); see also McCullough v. United States, 76 Fed. Cl. 1, 3 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007). Accordingly, Congress included subsection (e) in the in forma pauperis statute, which allows courts to dismiss lawsuits determined to be "frivolous or malicious." 28 U.S.C. § 1915(e). The United States Supreme Court has found that "a court may dismiss a claim as factually frivolous only if the facts alleged are 'clearly baseless' . . . a category encompassing allegations that are 'fanciful' . . . 'fantastic' . . . and 'delusional . . . .'" Denton v. Hernandez, 504 U.S. at 32-33 (internal citations omitted); see also Floyd v. United States, 125 Fed. Cl. 183, 191 (2016); Jones v. United States, 122 Fed. Cl. 543, 545 (2015), appeal dismissed (Fed. Cir. 2016); McCullough v. United States, 76 Fed. Cl. At 3 ; Schagene v. United States, 37 Fed. Cl. at 663. Courts, however, should exercise caution in dismissing a case under section 1915(e) because a claim that the court perceives as unlikely to be successful is not necessarily frivolous. See Denton v. Hernandez, 504 U.S. at 33. As stated by the United States Supreme Court, "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Id.

———————————

by nonprisoners."); Floyd v. United States Postal Serv., 105 F.3d 274, 275-76 (6th Cir.), reh'g denied (6th Cir. 1997); Schagene v. United States, 37 Fed. Cl. 661, 663 (1997), appeal dismissed, 152 F.3d 947 (Fed. Cir. 1998); see also In re Prison Litigation Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1997) (discussing how to administer in forma pauperis rights to a non-prisoner, thereby acknowledging the rights of non-prisoners to apply for in forma pauperis status); Leonard v. Lacy, 88 F.3d 181, 183 (2d Cir. 1996) (using "sic" following the word "prisoner" in 28 U.S.C. § 1915(a)(1) seemingly to indicate that the use of that word was too narrow); Smith v. United States, 113 Fed. Cl. 241, 243 (2013); Powell v. Hoover, 956 F. Supp. 564, 566 (M.D. Pa. 1997) (holding that a "fair reading of the entire section [28 U.S.C. § 1915(a)(1)] is that it is not limited to prisoner suits."). Moreover, 28 U.S.C. § 1915(a)(1) refers to both "person" and "prisoner." The word "person" is used three times in the subsection, while the word "prisoner" is used only once. This court, therefore, finds that the single use of the word "prisoner" in the language of 28 U.S.C. § 1915(a)(1) was not intended to eliminate a non-prisoner from proceeding in federal court in forma pauperis, provided that the civil litigant can demonstrate appropriate need. Any other interpretation is inconsistent with the statutory scheme of 28 U.S.C. § 1915.

The standard in 28 U.S.C. § 1915(a)(1) for in forma pauperis eligibility is "unable to pay such fees or give security therefor." Determination of what constitutes "unable to pay" or unable to "give security therefor," and therefore, whether to allow a plaintiff to proceed in forma pauperis is left to the discretion of the presiding judge, based on the information submitted by the plaintiff or plaintiffs.  See, e.g., Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 217–18 (1993); Roberson v. United States, 115 Fed. Cl. 234, 239, appeal dismissed, 556 F. App'x 966 (Fed. Cir. 2014); Fuentes v. United States, 100 Fed. Cl. 85, 92 (2011). This court and its predecessors were established to make available a user friendly forum in which plaintiffs can submit their legitimate claims against the sovereign, limited only by the legislative decision to waive sovereign immunity as to the types of claims allowed.  In fact, prominently posted at the entrance to this courthouse are the words of Abraham Lincoln: "It is as much the duty of government to render prompt justice against itself, in favor of citizens, as it is to administer the same, between private individuals."

Interpreting an earlier version of the in forma pauperis statute, the United States Supreme Court offered the following guidance:

> We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. We think an affidavit is sufficient which states that one cannot because of his poverty "pay or give security for the costs . . . and still be able to provide" himself and dependents "with the necessities of life." To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they have or can get, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges.  The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting the person thereby made an object of public support.  Nor does the result seem more desirable if the effect of this statutory interpretation is to force a litigant to abandon what may be a meritorious claim in order to spare himself complete destitution. We think a construction of the statute achieving such consequences is an inadmissible one.

Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339-40 (1948) (omissions in original).  In Fiebelkorn v. United States, for example, a Judge of the United States Court of Federal Claims indicated that:

> [T]he threshold for a motion to proceed in forma pauperis is not high: The statute requires that the applicant be 'unable to pay such fees.' 28 U.S.C. § 1915(a)(1). To be 'unable to pay such fees' means that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute.

Fiebelkorn v. United States, 77 Fed. Cl. 59, 62 (2007); see also McDermott v. United States, 130 Fed. Cl. 412, 414 (2017) (quoting Fiebelkorn v. United States, 77 Fed. Cl. at 62), aff'd, No. 2017-1790, 2017 WL 4082033 (Fed. Cir. June 13, 2017); Fuentes v. United States, 100 Fed. Cl. at 92; Brown v. United States, 76 Fed. Cl. 762, 763 (2007); Hayes v. United States, 71 Fed. Cl. 366, 369 (2006).

In her Application to Proceed In Forma Pauperis, plaintiff indicates that she earns $75,651.00 as an employee of the "U.S. Department of Commerce." Although plaintiff checked the "Yes" column indicating that she has received money from sources other than those listed in her Application to Proceed In Forma Pauperis, plaintiff states, "I have my payroll but no money coming from other resources." The court also notes that plaintiff has not completed the sections in the court's Application to Proceed In Forma Pauperis regarding whether plaintiff has received money in the form of "[r]ent payments, interest, or dividends," "[p]ensions, annuities, or life insurance payments," and "[g]ifts or inheritances." Plaintiff estimates that her monthly expenses include $1,504.34 for her mortgage, $600.00 for utilities, and a monthly car payment in an unspecified amount for a vehicle she does "not own it directly." Plaintiff also fails to indicate whether she has any debts or expenses. Because plaintiff has left portions of her Application to Proceed In Forma Pauperis incomplete, and appears to receive a steady income of more than $75,000.00 per year, it is difficult from plaintiff's submission, for the court conclude that the payment of court fees would impose a substantial hardship on plaintiff. As discussed in detail below, however, plaintiff's Application to Proceed In Forma Pauperis is moot because her complaint is being dismissed for lack of subject matter jurisdiction.

"Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)). The Tucker Act, 28 U.S.C. § 1491, grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable

under the Tucker Act. The claim must be one for money damages against the United States . . . ." <u>United States v. Mitchell</u>, 463 U.S. at 216; <u>see also</u> <u>United States v. White Mountain Apache Tribe</u>, 537 U.S. 465, 472 (2003); <u>Smith v. United States</u>, 709 F.3d 1114, 1116 (Fed. Cir.), <u>cert. denied</u>, 571 U.S. 945 (2013); <u>RadioShack Corp. v. United States</u>, 566 F.3d 1358, 1360 (Fed. Cir. 2009); <u>Rick's Mushroom Serv., Inc. v. United States</u>, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); <u>Golden v. United States</u>, 118 Fed. Cl. 764, 768 (2014). In <u>Ontario Power Generation, Inc. v. United States</u>, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." <u>Eastport S.S. [Corp. v. United States</u>, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting <u>Clapp v. United States</u>, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." <u>Eastport S.S.</u>, 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." <u>Id.</u>; <u>see also</u> [<u>United States v. ]Testan</u>, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting <u>Eastport S.S.</u>, 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

<u>Ont. Power Generation, Inc. v. United States</u>, 369 F.3d 1298, 1301 (Fed. Cir. 2004); <u>see also</u> <u>Twp. of Saddle Brook v. United States</u>, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" <u>United States v. Navajo Nation</u>, 556 U.S. at 290 (quoting <u>United States v. Testan</u>, 424 U.S. 392, 400 (1976)); <u>see also</u> <u>United States v. White Mountain Apache Tribe</u>, 537 U.S. at 472; <u>United</u>

States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Price v. United States, 133 Fed. Cl. 128, 130 (2017); Peoples v. United States, 87 Fed. Cl. 553, 565-66 (2009).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. at 94 ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Fid. & Guar. Ins. Underwriters, Inc. v. United States, 805 F.3d 1082, 1084 (Fed. Cir. 2015); Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2018); Fed. R. Civ. P. 8(a)(1), (2) (2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570. To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)); Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), aff'd, 460 U.S. 325 (1983). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or

'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

Plaintiff's complaint alleges various violations of her civil rights due to her race, age, and in retaliation for previous EEO cases filed by plaintiff. Plaintiff claims, among other allegations, that her employer took assignments away from her as punishment, and forced her to take on new tasks despite a lack of training, plaintiff claims that her requests to telework were denied, plaintiff claims she was supervised by staff other than her supervisor, and that "[t]he Agency has fostered a culture of bigotry." Plaintiff's amendment to her complaint also makes additional allegations of retaliation, including a denial of her requests for time off to work on her complaints against her employer, and allegations that her employer set her up to fail. Plaintiff's complaint in this court requests that the court consider her four EEO cases, case numbers 54-2015-00095, 54-2015-00258, 54-2016-00327, and 54-2018-00028, all alleging discrimination and retaliation. In her June 26, 2018 filing, plaintiff urges this court that jurisdiction is proper because she has brought her claims pursuant to 42 U.S.C. § 1983 (2012). Plaintiff argues that both District Courts and the United States Court of Federal Claims have concurrent jurisdiction over such claims.

To the extent plaintiff is generally trying to allege a violation of her civil rights, the United States Court of Federal Claims lacks jurisdiction to hear claims alleging a deprivation of civil rights under color of law. See Elkins v. United States, 229 Ct. Cl. 607, 608 (1981) ("[W]e do not have jurisdiction over claims based upon alleged violations of the civil rights laws." (citation omitted)); see also Johnson v. United States, 135 Fed. Cl. 565, 575 (2017) ("Section 1343 of Title 28 provides the federal District Courts original jurisdiction over any relief requested under an 'Act of Congress providing for the protection of civil rights.'" (citations omitted)); Vincent v. United States, 135 Fed. Cl. 561, 563 (2017) ("[A]ctions for civil rights violations brought under 42 U.S.C. § 1983 (2012) cannot be heard by this court." (citing Marlin v. Untied States, 63 Fed. Cl. 475, 476 (2005), appeal dismissed, 146 F. App'x 491 (Fed. Cir. 2005)), aff'd, No. 2018-1739, slip op. (Fed. Cir. May 4, 2018); Wagstaff v. United States, 105 Fed. Cl. 99, 109 (2012); May v. United States, 104 Fed. Cl. 278, 284 (2012), aff'd, 534 F. App'x 930 (Fed. Cir. 2013); Hanes v. United States, 44 Fed. Cl. 441, 449 (1999), aff'd, 243 F.3d 562 (Fed. Cir.), reh'g denied (2000); Sanders v. United States, 34 Fed. Cl. 75, 80 (1995) (concluding that the general civil rights claims alleged are not based on any money-mandating provisions, and do not give rise to liability for the United States), aff'd, 104 F.3d 376 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir. 1996), cert. denied, 522 U.S. 831, reh'g denied, 522 U.S. 1036 (1997); Blassingame v. United States, 33 Fed. Cl. 504, 505, aff'd, 73 F.3d 379 (Fed. Cir. 1995), reh'g denied (Fed. Cir.), cert. denied, 517 U.S. 1237 (1996); Anderson v. United States, 22 Cl. Ct. 178, 179 n.2 (1990) ("Jurisdiction over such cases resides in the district courts relative to violations of any provision of the Civil Rights Act") aff'd, 937 F.2d 623 (Fed. Cir. 1991). Furthermore, in Blassingame v. United States, a Judge of this court determined that jurisdiction is lacking over claims brought pursuant to civil rights

laws, including 42 U.S.C. § 1983, as jurisdiction for such claims remains exclusively with the District Courts. The Blassingame court stated:

> Section 1983 is not a jurisdiction-granting statute. District courts are given jurisdiction to hear claims for damages for violation of that provision by virtue of 28 U.S.C. § 1343(a)(4) (1988). Such an action cannot be sustained here, however, because this court has not been given an equivalent jurisdiction. See Sanders v. United States, 32 Fed. Cl. 573, 576 (1995); Anderson v. United States, 22 Cl. Ct.178, 179 n. 2 (1990), aff'd, 937 F.2d 623 (Fed. Cir. 1991).

Blassingame v. United States, 33 Fed Cl. at 505. Accordingly, this court dismisses plaintiff's claims alleging civil rights violations for lack of jurisdiction.

Plaintiff also seeks compensatory damages "for emotional distress, harassment, embarrassment, and continued reprisal." Plaintiff's complaint claims that her employers took actions against her which created a hostile work environment. Plaintiff alleges various instances of harassment, including micromanagement and extra supervision, criticism of her work and undeservedly negative performance evaluations. Defendant, however, argues that this court does not have jurisdiction to award damages for claims based in tort and moves for dismissal pursuant to RCFC 12(b)(1).

Although plaintiff alleges to state that "[t]he Court of Federal Claims possesses exclusive jurisdiction for all cases, not sounding in tort," plaintiff continues to assert that this court has jurisdiction to hear her claims under the Tucker Act. This court, however, lacks jurisdiction to hear tort claims against the United States. See 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction . . . in cases not sounding in tort."); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993) ("[T]ort cases are outside the jurisdiction of the Court of Federal Claims today."); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997) ("The Court of Federal Claims is a court of limited jurisdiction. It lacks jurisdiction over tort actions against the United States."); Kant v. United States, 123 Fed. Cl. 614, 616 (2015); Cottrell v. United States, 42 Fed. Cl. 144, 149 (1998) ("[The court] does not have jurisdiction over harassment claims." (citing Pinkston v. United States, 6 Cl. Ct. 263, 267 (1984)); Gates v. United States, 33 Fed. Cl. 9, 12 (1995) (concluding that the court does not have jurisdiction to entertain claims alleging emotional distress (citations omitted)). In contrast, "district courts have exclusive jurisdiction to consider tort claims against the United States that fall within the purview of the FTCA [Federal Tort Claims Act]." Bobka v. United States, 133 Fed. Cl. 405, 412 (2017); Because this court does not have jurisdiction to review tort claims, and because plaintiff's allegations of harassment, hostile work environment, and emotional distress all sound in tort, this court does not have jurisdiction over plaintiff's claims, and plaintiff's tort claims are dismissed.

Plaintiff also asks, and asserts this court to order, (1) a rewrite of plaintiff's performance reviews from 2015 through 2017 removing negative feedback of plaintiff, (2) a promotion to the next grade level, (3) the removal of her current management, and (4)

for the retaliation to stop. Defendant argues that even if this court had jurisdiction to entertain plaintiff's claims, it lacks jurisdiction to grant plaintiff's requests for such equitable and injunctive relief.

This court's ability to grant equitable relief is limited, and does not extend to the sort of injunctive relief requested by plaintiff. See United States v. Tohono O'Odham Nation, 131 S. Ct. 1723, 1729 (2011) (The United States Court of Federal Claims "has no general power to provide equitable relief against the Government or its officers."); Massie v. United States, 226 F.3d 1318, 1321 (Fed. Cir. 2000) ("Except in strictly limited circumstances, see 28 U.S.C. § 1491(b)(2), there is no provision in the Tucker Act authorizing the Court of Federal Claims to order equitable relief." (citing United States v. King, 395 U.S. 1, 4 (1969) ("cases seeking relief other than money damages from the court of claims have never been 'within its jurisdiction'") and Placeway Constr. Corp. v. United States, 920 F.2d 903, 906 (Fed. Cir. 1990))); James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998), reh'g denied (Fed. Cir. 1999) ("[T]he Court of Federal Claims has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'" (quoting Austin v. United States, 206 Ct. Cl. 719, 723, cert. denied, 423 U.S. 911 (1975))); Westlands Water Dist. v. United States, 109 Fed. Cl. 177, 192 (2013); Haka v. United States, 107 Fed. Cl. at 113; Halim v. United States, 106 Fed. Cl. 677, 684–85 (2012); Smalls v. United States, 87 Fed. Cl. 300, 307 (2009); Voisin v. United States, 80 Fed. Cl. 164, 178 (2008) ("It is well-established that the Court of Federal Claims generally does not have the authority to entertain declaratory judgment requests."). Because this court lacks the authority to grant plaintiff's claims for equitable and injunctive relief, those claims must also be dismissed.

## CONCLUSION

The court **GRANTS** defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). Plaintiff's complaint is **DISMISSED**. Plaintiff's Application to Proceed In Forma Pauperis is **MOOT**. The Clerk of Court shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

‾MARIAN BLANK HORN
**Judge**